35 So.3d 47 (2010)
Samuel COX, Appellant,
v.
STATE of Florida, Appellee.
No. 1D08-5731.
District Court of Appeal of Florida, First District.
April 13, 2010.
Rehearing Denied May 12, 2010.
James T. Miller, Jacksonville, for Appellant.
Bill McCollum, Attorney General, Charlie McCoy, Senior Assistant Attorney General, Tallahassee, for Appellee.
THOMAS, J.
Under current law, Florida Rule of Criminal Procedure 3.172(g) has been interpreted to grant a criminal defendant the substantive right to unilaterally withdraw from a negotiated plea agreement. *48 We write to note that rule 3.172(g) should be amended to prohibit defendants from withdrawing from negotiated plea agreements when the State has completed or partially completed its part of the agreement. In addition, we certify a question of great importance.
In 2006, Appellant was charged with two counts of conspiring to traffic in more than 400 grams of cocaine. Appellant pled guilty more than two years ago. As part of the plea agreement, Appellant stated, "I waive my right to withdraw this plea." During the plea colloquy, the trial court questioned Appellant extensively regarding his plea to ensure it was "freely and voluntarily entered, with a full understanding of the nature and consequences of your plea." Due to unintentional error, the trial court apparently overlooked the requirement to state that the court "accepted the plea." The case was removed from the trial docket. Appellant and the State agreed to confidential terms regarding substantial agreement, and the trial court sealed the plea agreement.
As a further part of the agreement, Appellant and the State agreed to a 90% bond reduction, from $1,000,000 to $75,000. This allowed Appellant to remain free for an extended period of time in order to perform his obligations. In addition, as part of the agreement, the State agreed to a sentencing range of five to thirty years for the two first-degree felonies. This allowed Appellant to eliminate the risk of being sentenced to life imprisonment as an habitual felony offender.
At sentencing, the trial court heard evidence regarding Appellant's purported attempts to substantially comply with the agreement. The court complied with the plea agreement and sentenced Appellant to concurrent terms of thirty years in prison. Thus, Appellant received significant benefits from his plea bargain. There is no claim that the State did not perform its part of the agreement.
Appellant waived his right to withdraw his guilty plea by entering into a plea bargain with the State. State v. Simons, 22 So.3d 734 (Fla. 1st DCA 2009) (Hawkes, J., dissenting). In Simons, this court held that a defendant can force the State to comply with a settlement agreement in a pretrial intervention program, in which the State has complete discretion to consent to enter. Id. at 736. See § 948.08(2), Fla. Stat. ("Any ... offender ... is eligible for release to the pretrial intervention program on the approval of ... the state attorney...."). In Simons, this court noted, "It is significant that the state attempted to withdraw from the settlement agreement after the defendant had partly performed the agreement.... [I]t is a settled principle of criminal procedure that, if the government fails to honor a plea agreement, the court may either enforce the agreement or allow the defendant to withdraw the plea." Simons, 22 So.3d at 736. If the Florida Rules of Criminal Procedure can compel the State to comply with a negotiated dismissal of criminal charges in a pretrial intervention program or other type of plea agreement, those rules should similarly compel a defendant to fulfill his obligation in a plea negotiation.
It is well established that a plea agreement is a contract. Garcia v. State, 722 So.2d 905 (Fla. 3d DCA 1998), rev. dismissed, 727 So.2d 905 (1999). Here, in violation of that principle, under controlling case law, we must allow Appellant the opportunity to withdraw from his plea contract more than two years later merely because he would rather choose another option. Harrell v. State, 894 So.2d 935, 939 (Fla.2005); Howard v. State, 516 So.2d 31, 32 (Fla. 1st DCA 1987). The State will now be required to prosecute Appellant a *49 second time for crimes that allegedly occurred almost four years ago. While it may sound reasonable to state that we have "returned [the state] to the same position it was in before the plea agreement," Mackey v. State, 743 So.2d 1117, 1119 (Fla. 2d DCA 1999), that does not reflect the reality in the courtroom. During the course of time, witnesses' memories fade and evidence becomes stale. It is difficult to believe the State will not be prejudiced in its case against Appellant.
We think that the above prior precedent interpreting rule 3.172(g) should be reconsidered. If necessary, this rule should be amended to protect the integrity of the plea negotiation process and prevent inequitable results, as has occurred here. Appellant will now obtain relief, which violates the principles of equitable estoppel. Cf. Major League Baseball v. Morsani, 790 So.2d 1071, 1077 (Fla.2001). In addition, the important principle of finality will be violated in this case. In our view, the holding in this case is not in accord with the proper administration of justice or the rule of law.
Prior precedent requires us to reverse and remand with directions to allow Appellant to withdraw his plea. In doing so, however, we certify the following question:
DOES THE HOLDING IN HARRELL V. STATE, 894 So.2d 935 (Fla.2005), REQUIRE THAT A TRIAL COURT MUST ALLOW A DEFENDANT TO WITHDRAW HIS PLEA, EVEN WHERE THE STATE HAS PERFORMED ITS OBLIGATIONS UNDER THE PLEA AGREEMENT, MERELY BECAUSE THE TRIAL COURT INADVERTENTLY NEGLECTED TO STATE THAT IT HAD "ACCEPTED THE PLEA"?
REVERSED and REMANDED; QUESTION CERTIFIED.
WOLF, J., concurs with opinion; WEBSTER, J., concurs in result only with opinion.
WOLF, J., concurring.
We should not worship at the temple of "bright line rules." The justifications for stringent, ritualistic compliance with rules and enforcement by mandated reversal in all cases where rules are not followed are overall fairness, consistency and ease of administration by appellate courts. These general considerations should not override the court's responsibility to reach the appropriate result in individual cases. Inflexible and blind adherence to bright line rules has too many times resulted in illogical or unjust results.
While I concur with Judge Webster that compliance with Florida Rule of Criminal Procedure 3.172(g) results in certainty and order in the legal process, failure to utter the "magic words" should not result in an automatic leave to withdraw from a plea agreement. The trial court's failure to follow the formalistic requirements of the rule should only be one factor (albeit an important one) in determining whether to allow a defendant to withdraw a freely and voluntarily entered plea.
In the instant case, the reversal mandated by following the "bright line rule" is illogical and inequitable. I, therefore, concur in Judge Thomas's invitation to the supreme court to revisit the issue of mandated reversal.
WEBSTER, J., concurring in result only.
I concur in the result reached by the majorityto reverse and remand with directions to allow appellant to withdraw his pleaas such a result is clearly mandated by Florida Rule of Criminal Procedure 3.172(g) and Harrell v. State, 894 So.2d 935, 939 (Fla.2005). However, I disagree *50 with virtually everything else in the majority opinion.
What is now subdivision (g) of rule 3.172 was originally adopted as subdivision (f) in 1977. The Fla. Bar re Fla. Rules of Criminal Procedure, 343 So.2d 1247, 1255 (Fla. 1977). It has remained substantively unchanged since its initial adoption. Its intended purpose is clearto permit either the state or a defendant to withdraw a previously made offer. Obviously, there must be some time beyond which it is no longer possible for either party to withdraw an offer. A bright-line rule is an absolute necessity so that the parties will know at what point they are bound by their agreement. Rule 3.172(g) establishes that bright-line at the time when, "after making all the inquiries, advisements, and determinations required by th[e] rule" to ensure that the defendant's plea is voluntary and intelligently made, the trial court "formally" accepts the plea. It is a rule that has, in general, worked well for more than 30 years. Unfortunately, problems occasionally arise when a trial judge fails to comply with his or her obligation to formally accept the plea. I suggest such isolated failings by trial judges do not provide a valid justification for tinkering with the rule.
The concerns expressed by the majority are apparently limited to those relatively few cases which involve substantial assistance agreements of some sort. In such cases, it is not unusual for a meaningful period of time to pass between entry of the plea and sentencing to afford the defendant an opportunity to attempt to carry out his part of the agreement. However, even in such cases the problem identified by the majorityallowing the defendant to withdraw from the agreement after the state has partially or fully performed its part of the agreementmay be easily avoided. The trial judge merely needs to formally accept the plea as required by rule 3.172(g).
I also disagree with the majority's certification to the supreme court. What constitutes "a question ... of great public importance" for purposes of Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) is not defined in those rules. The Fourth District Court of Appeal has said that "one general guide is that a question should be certified where our decision will affect a large segment of the public and the extant decisional law may not coalesce around a single answer to the question posed." Star Cas. v. U.S.A. Diagnostics, Inc., 855 So.2d 251, 252 (Fla. 4th DCA 2003). Using that test or any other, it does not seem to me that any question this case might pose could reasonably be considered one "of great public importance." Moreover, the question actually posed by the majority is susceptible to only one answer. Clearly, as written, and as interpreted in Harrell, rule 3.172(g) requires that the question be answered "yes."
Finally, to the extent that the majority is proposing the desirability of an amendment to rule 3.172(g), the appropriate procedure is set out in Florida Rule of Judicial Administration 2.140. The amendment process there set out exists for a purpose, and we circumvent it at our peril, as we have seen many times.
For all of the reasons expressed, while I concur in the result reached by the majority, I am unable to agree with the remainder of their opinion.